This is a suit on a policy of industrial accident insurance.
Plaintiff, the insured, alleges that on March 19, 1940, he suffered accidental injury, consisting of severe contusions of the back, which continuously and totally disabled him from performing any work until September 30, 1940, or a period of twenty-eight weeks; that under the provisions of said policy, all terms and conditions of which he asserts he has complied with, he is entitled to indemnity for that period at the rate of $7 per week, or the full benefit thereunder. Plaintiff further alleges that he has been paid one-half the benefit claimed, or $3.50, for a period of twenty-five weeks, and that, therefore, additional benefits in the amount of $3.50 are due for these twenty-five weeks, plus the full benefit of $7 weekly for three weeks, or a total of $108.50; that payment of this additional amount has been arbitrarily refused by the defendant company and that, consequently, under the penal provisions of Act 310 of 1910, he is entitled to double the *Page 250 
amount claimed by him, or $217, plus reasonable attorney's fees.
Defendant company admits the issuance of the policy, payment of all premiums and the accidental injury, diagnosed as "contusion of the back". It alleges the payment to plaintiff of one-half the full weekly benefit of $7, or $3.50, for a period of twenty-six weeks, covering all disability up to September 16, 1940, on which date, it is asserted, plaintiff had completely recovered; that for the injury sustained by plaintiff its liability under the policy has been completely discharged and that no other sums are due.
At the trial of the case in the lower court plaintiff admitted that his disability ceased on September 16, 1940, and waived any claims beyond that date. However, he denied that he had received payment for twenty-six weeks, contending that he had been paid for twenty-five weeks only.
After hearing evidence on these issues, the trial judge sustained and recognized defendant's contention as to the amount of the indemnity payments due plaintiff under the policy, but sustained the right of plaintiff to recover one week's unpaid benefit and granted judgment in his favor in the sum of $3.50. Plaintiff has appealed from the judgment, claiming that the court was in error in not permitting recovery for the full benefits provided by the policy. Defendant has answered the appeal asking that the claims of plaintiff be completely rejected.
It will be seen from the foregoing that the only questions presented by this appeal are:
(1) Whether defendant is liable for the full weekly benefit of $7 under the policy, as contended by plaintiff, or one-half that amount, as contended by defendant.
(2) Whether or not plaintiff received weekly benefit payments for twenty-six weeks, admittedly the full period of his disability.
The policy contract provides for weekly disability benefits of $7 in the event of disability resulting from sickness or accident.
The pertinent condition of the policy dealing with weekly benefit payments other than full disability benefits, reads as follows: "* * * The company's liability shall be one-half of the amount which would be otherwise payable under this policy for claims presented for conditions diagnosed as contusion orsprained back, or other injury where there is no externalevidence." (Italics ours).
It is conceded that plaintiff sustained an injury diagnosed as "contusions", with accompanying external evidence thereof. Plaintiff contends that the words "where there is no external evidence" refer back to and qualify the word "contusion", and that, as a consequence, having sustained a contusion with "external evidence", he is entitled to full weekly benefits. If such is the case, it is conceded that plaintiff is entitled to recover, otherwise his claim must fall.
On the other hand, counsel for defendant contend that, since plaintiff sustained a contusion, the foregoing stipulation controls; that the language used is explicit and clearly provides that recovery is limited to one-half the amount otherwise payable in the event the assured sustains the injury specifically named.
We do not agree with plaintiff's contention. The risk assumed by the insurer is stated in the policy in clear and unambiguous language. It so clearly speaks the intent of the parties that there is no room left for speculation as to its meaning. The provision clearly sets forth that the liability of the company shall be limited to a specific portion of the full benefit for "conditions diagnosed as contusions or sprained back, * * *". This was the specific injury suffered by plaintiff, though admittedly accompanied with "external evidence".
Hence, the theory upon which plaintiff relies is that the words "or other injury where there is no external evidence" should be read in connection with the preceding words, "contusion or sprained back", and should be interpreted as qualifying the latter words.
The medical meaning of the word "contusion" is defined in Webster's New International Dictionary (2d Ed.) as "a bruise; an injury attended with more or less disorganization of the subcutaneous tissue and effusion of blood beneath the skin, but without breaking of the skin".
Dr. Scott, who treated plaintiff for his injuries, testified that there were objective symptoms, or external evidence of the contusion suffered by plaintiff. But he reiterated that in every contusion of the back there is external evidence of the injury; that this external evidence is not an independent condition, but a definite component part of a contusion; that this external *Page 251 
evidence necessarily follows and one is not found without the other. We are not aware of the contrary, nor have we been afforded any testimony disputing the conclusions reached by this medical expert.
It is plainly seen that a "contusion" is a well-known and well-defined injury. It specifically signifies a subject greatly different in effect from an injury having "no external evidence". It is an injury which, of itself, necessarily produces and brings about "external evidence" of its occurrence. Injuries which produce "no external evidence" are quite dissimilar in their effects upon the human body.
It is evident, therefore, that the injury sustained by plaintiff fell within the class specifically defined, and the benefits, flowing from the policy, are subject to the restrictions therein provided.
It is contended that by the use of the words "or other injury" in the above-quoted stipulation, the word "other" conveys the idea of "additional" injuries to those mentioned, and that the words "contusion or sprained back" are illustrative of what is meant to be conveyed.
The word "other" has an accepted meaning, though it is not difficult, in its use, to convey two different meanings. In the case of State v. Breaux, 169 La. 394, 125 So. 283, 285, the Supreme Court said:
"* * * There can be no doubt that the word `other' ordinarily means `different from.'
"The American and English Encyclopedia of Law states that `the word "other" means different from that which has been specified.'
"According to 29 Cyc. 1532: `The word has been defined as meaning different from that which has been specified; not the same; not this or these; different.'"
It appears clear from the clause stipulated that specific injuries, such as "contusions or sprained back", were considered, on the one hand, and some "other" class of injuries, on the other hand, such as those having no "external evidence". It must be conceded that there are injuries "other than contusions. Hence, when the defendant wrote into the policy contract — which was accepted by plaintiff — the words "or other", the idea clearly conveyed was an intention to pay for injuries other than contusions. The words "no external evidence" are intended to and clearly mean to be restricted to injuries "other" than contusions. If the quoted words, "where there is no external evidence" had been used in their unrestricted sense and had thus been intended to refer to and qualify the words "contusion or sprained back", there would have existed no necessity to mention the specific or particular class of injuries preceding. All that it would have been necessary to say was that one-half of the benefits are payable for "all injuries where there is no external evidence".
We might also observe, in passing, that were plaintiff's contention correct, it would be necessary to accept the fallacy that a "contusion" may exist without external evidence, for, as has been shown by the medical testimony and the medical definition of "contusion", such an injury cannot be sustained without the appearance of external evidence.
We have had occasion to interpret similar clauses in other cases. In Lewis v. First National Life Insurance Company, La.App., 199 So. 196, the assured died from heart disease, and it was stipulated that the defendant was unable to prove that this disease had been contracted by the assured after the issuance of the policy. The policy provided that only one-half of the death benefit would be due "if the insured shall die from Heart Disease, * * * High Blood Pressure, or any chronic diseases contracted before this Policy has been in force for twelve (12) months". It was contended by the plaintiff that the words "Heart Disease" should be read in connection with the clause "or any chronic diseases contracted before this Policy has been in force for twelve (12) months", and that, in order for the restriction to become applicable, there must be proof to show that the heart disease from which the insured died was contracted within twelve months after the policy was in force. The defendant was unable to adduce this proof. We rejected this contention, holding that the words "contracted before this Policy has been in force for twelve (12) months" related and referred solely to the words "or any chronic diseases", and not to the diseases specifically named which preceded and were separate and apart from the clause "or any chronic diseases contracted before this Policy has been in force for twelve (12) months." In interpreting the grammatical construction of the clause, we said: "The `Heart Disease' and other diseases specifically mentioned in the policy provision are separated by commas from *Page 252 
the clause `or any chronic disease contracted before this Policy has been in force for twelve (12) months'. The presence of these commas indicates a clear intention on the part of the writer of the contract to disassociate the diseases specifically mentioned from the clause `or any chronic diseases contracted before this Policy has been in force for twelve (12) months'. In other words, if death occurs from any of the diseases specifically mentioned, it is not necessary that it be shown that such disease was contracted at any particular time in order for the limitation to apply but, if death occurs from a chronic disease, which is not included in those particularly named, the insurer is required to show that such chronic disease was contracted within twelve (12) months after the issuance of the policy in order for it to successfully defeat the plaintiff's right to recover the full death benefit."
The Lewis case is manifestly analogous to the one before us now. Here, the words "contusion or sprained back" are separated by a comma from the clause "or other injuries where there is no external evidence". The presence of this comma indicates a break in the sense, or continuity of the sentence. It is evident that the writer of the policy intended to and did keep the specific and generalized injuries separate and independent. Persuasive reasons exist for no other construction. See Albert v. New Capital Industrial Life Insurance Company, La.App., 154 So. 755; Gray v. Louisiana Industrial Life Insurance Company, La.App., 193 So. 278.
It is well recognized that an insurance policy is the contract between the parties, and, like all other contracts, it is the law between them. Dorsett v. Thomas, 152 La. 60, 92 So. 734; Laporte v. North American Accident Insurance Company, 161 La. 933,109 So. 767, 48 A.L.R. 1086.
"Agreements legally entered into have the effect of laws on those who have formed them." R.C.C. Art. 1901.
It is admitted that plaintiff is entitled to indemnity payments for a period of twenty-six weeks. He testified that he received payments for twenty-five weeks and repudiated the receipt purportedly signed by him evidencing payment for the one week in question. He testified that the signature appearing thereon, purporting to be his, was a forgery. Defendant offered no evidence to contradict this, or to prove the alleged payment.
"He who claims the execution of an obligation must prove it.
"On the other hand, he who contends that he is exonerated, must prove the payment or the fact which has produced the extinction of the obligation." R.C.C. Art. 2232.
Authorities applying this principle of law are too numerous to require citation.
Having failed to discharge its burden by that measure of proof required, we conclude that plaintiff is entitled to recover the amount of $3.50 as a one-half weekly benefit remaining unpaid under the policy provisions.
For these reasons, the judgment appealed from is affirmed, with all costs.
Affirmed.