## OLD COLONY TRUST CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3386.

Circuit Court of Appeals, First Circuit.

March 2, 1939.

Alexander Lincoln, of Boston, Mass. (W. Sidney Felton, Noel Morss, and Herrick, Smith, Donald & Farley, all of Boston, Mass., on the brief), for Old Colony Trust Co. et al.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for Commissioner.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge.

This is a petition for review of a decision of the United States Board of Tax Appeals, determining a deficiency in the estate tax liability of the estate of which the petitioners are executors. The ques-

---

tion is whether a sum of money paid to the beneficiaries pursuant to a policy issued by the Sun Life Assurance Company of Canada should be included in the gross estate of the decedent.

The decedent, Everett Morss, died December 27, 1933.

On August 27, 1928, the Assurance Company entered into a written contract with Morss. The contract, therein termed a "policy", provided that in consideration of the payment of a single premium of $42,000 the company would pay to the decedent (therein called "the annuitant") a yearly annuity of $1,400 during his lifetime, and would pay at his death to the beneficiaries named in the policy the greater of two amounts,—first, the principal sum of $40,000 together with a proportionate part of the annuity payment for the fractional period between the date of the last annuity payment and the date of death, or, second, a sum equal to the premium paid for the policy less the sum of all annuity payments which should have been made under it; all annuity payments, including the proportionate payment on the death of the annuitant, to be increased by such dividends as might be allotted by the company out of its surplus interest earnings. The beneficiaries were the decedent's three children, and it was provided "that should any child have predeceased the annuitant, his or her share shall be paid to his or her legal wife or husband, if any, otherwise to the executors, administrators or assigns of the annuitant." In lieu of payment in one sum of the amount payable at death, options were given for alternative methods of settlement by annuity or instalment payments.

The age of the decedent was stated in the policy as sixty-three. The policy was stated to be issued in consideration of the representations and agreements contained in the written application therefor, and it was provided that if the age of the annuitant had been misstated, the amount payable should be such sum as the premium paid would have purchased according to the rate at the true age. The policy contained a provision permitting its surrender to the company at any time for an amount equal to the principal sum, and the company agreed that it would advance to the annuitant, upon proper assignment of the policy, any amount not exceeding the cash value of the policy. There was a provi-

sion also permitting the annuitant to change the beneficiaries. The contract was described as "Life Annuity Principal Sum Payable at Death—Single Premium—Annual Dividends."

After the death of the decedent, the Assurance Company in due course paid to his three children the sum of $40,994.20. Of this amount, $40,000 was the principal sum under the policy and $994.20 was accrued annuity.

The petitioners, in their federal estate tax return, reported the receipt of said sum of $40,994.20 as insurance on the life of the decedent, payable to the named beneficiaries, and excluded the amount of $40,000 as "Insurance receivable by beneficiaries other than the estate not in excess of $40,000."

The Commissioner added to the value of the gross estate the amount of $40,000, having concluded that the agreement under which the payment was made was not a policy of insurance but an annuity contract, and as such was taxable to the estate.

The Board of Tax Appeals held that the Commissioner was correct in including that amount in the gross estate.

It was stipulated between the parties in the proceedings before the Board that the following facts should be deemed to be true for the purposes of the appeal.

The consideration paid by the decedent for the issue of the contract was allocated by the Sun Life Assurance Company of Canada on an actuarial basis, a portion of such consideration being treated as an amount paid for a life annuity during the life of the decedent and the other portion of such consideration as an amount paid as a single premium for a paid-up life insurance policy on the life of the decedent. Subject to only minor variations, the amounts so allocated accord with the published premium rates of the Sun Life Assurance Company of Canada for the issue of such life annuity and life insurance contracts respectively, issued in each instance to a male person of the age of the decedent.

Contracts of the type issued by the Sun Life Assurance Company of Canada to the decedent, in August, 1928, were commonly written at that time by the Sun Life Assurance Company of Canada and by numerous other insurance companies.

An actuarial allocation of the consideration paid for the issue of such contracts is customarily made by the Sun Life Assurance Company of Canada and by other insurance companies writing similar contracts, the method of allocation employed and the results of such allocation being substantially as set forth above with respect to the allocation of the consideration paid under the contract of the decedent.

The Commissioner reserved the right to object to these facts as being irrelevant and immaterial, and the Board apparently deemed them immaterial.

The statute upon which petitioner relies is section 302(g) of the Revenue Act of 1926, 26 U.S.C.A. § 411(g), which provides for the inclusion in a decedent's gross estate of the excess over $40,000 of the amount receivable by all beneficiaries, other than decedent's estate, "as insurance under policies taken out by the decedent upon his own life." The case turns upon the question whether the contract described above was a contract of life insurance or an annuity or investment contract. The Board of Tax Appeals held that the contract made by the decedent was not a contract of life insurance. In its opinion it said:

"This seems evident from reading the contract. Further, there is no evidence that decedent applied for life insurance or submitted to the usual physical examination. The company appears to have been unconcerned with the element of life expectancy or physical condition, even though decedent was 63 years of age at the time he made the contract. The single payment in the amount of $42,000 does not appear to have been a 'premium' for life insurance. It was not consideration given for an agreement to indemnify against the loss of life nor does the amount of the payment appear to have been proportioned to any life insurance risk."

As the Board of Tax Appeals pointed out, the company agreed to pay "the annuitant" the amount of $1,400, annually, for life, to be increased by such dividends as may be allotted by the company out of its surplus interest earnings; to pay to the annuitant or his assigns $40,000, at any time upon surrender of the contract; to pay to the beneficiaries of the annuitant at least the principal sum of $40,000 upon proof of death of the annuitant. The amount of the annuity agreed to be paid is 3½% (three and one-half percent) of the principal amount. Thus it appears that the company guaranteed to the annuitant a return of 3⅓% (three and one-third percent) on the total amount paid to the company and a return of at least the principal amount of $40,000 either to the annuitant or his assigns during his life, on surrender of the "policy", or to his beneficiaries upon his death. The Board, in its opinion, added that:

"The death of the annuitant operated to terminate the contract rather than cause an insurer's obligation to become payable. The company had an obligation at all times to pay the principal sum set forth in the contract conditioned only on the surrender thereof. Death of the annuitant was not the sole contingency for payment of the principal sum."

■■■ We are of the opinion that the decision of the Board of Tax Appeals was correct. A contract of insurance is generally regarded as one whereby, for a stipulated consideration, a party undertakes to indemnify another against loss by a specified contingency or peril, called a "risk". In the case of life insurance, the contingency is the death of the insured. The contract now under consideration does not present the essential requisites of life insurance. There is no undertaking by the company to indemnify anyone for a loss. The extent of its liability for the principal sum was not contingent upon the event of death. That event only determined the time when and the persons to whom the sum advanced was to be repaid. The petitioner argues that the company assumed a risk, but we have difficulty in discovering any risk which was dependent upon the duration of the life of the insured. To go to realities, we are confronted with a case where the decedent turned over to the company $42,000 and took the company's agreement that it would return $40,000 at any time he or his assigns so requested, and in the meantime would pay to him an amount equal to 3½% (three and one-half percent) of that sum so long as the company retained it. It is true the company made the further agreement that, upon the decedent's death the $40,000 was to be paid over to the beneficiaries. We do not think that such an undertaking involved the kind of risk which characterizes life insurance.

It is the petitioner's contention that the policy combines an annuity feature and a life insurance feature, and, so far as it provides for a payment of the principal sum on the death of the insured, it is a contract of life insurance. This contention is not sound because the obligations of the company were such that the investment feature predominates and gives character to the contract. In other jurisdictions, there is authority for the proposition that annuity and investment contracts are not life insurance contracts, even though provision is made for the payment to beneficiaries named. State. ex rel. Thornton v. Probate Court, 186 Minn. 351, 243 N.W. 389; In re Walsh, D.C., 19 F. Supp. 567; Moskowitz v. Davis, 6 Cir., 68 F.2d 818; Carroll v. Equitable Life Assurance Society of the United States, D. C., 9 F.Supp. 223.

Moskowitz v. Davis, supra, was a case where a single premium had been paid for an agreement to pay a specified sum at a future date. If the policy-holder died before that date, the sum of the premiums paid was to be paid to his son. In the course of the opinion, the court said:

"We think the contract simply represents an investment or pure endowment with a provision for return of premiums rather than life insurance." [68 F.2d 819.]

The mere fact that the company agreed to pay over to named beneficiaries the principal of $40,000 upon the annuitant's death is not sufficient to justify giving to a purely investment contract the attributes of life insurance in the absence of the essential requisite of such insurance.

We are not able to see resemblance between the policy which is the subject of this controversy and policies before the court in Helvering v. Inter-Mountain Life Insurance Co., 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227, and Helvering v. Illinois Life Insurance Co., 299 U.S. 88, 57 S.Ct. 63, 81 L.Ed. 56, but it may be noted that the court, in applying provisions of the income tax laws, drew a clear distinction between liability arising from death of the insured and liability which could not be attributed to life insurance risk.

The petitioner has assigned as error the refusal of the Board of Tax Appeals to receive in evidence the facts stipulated to be true, as recited above. On the particular facts of this case, we agree that the question presented could well be determined with reference to the provisions of the contract without recourse to accounting or actuarial practices of the Sun Life Assurance Company or of any other company issuing similar policies.

The order or decision of the Board of Tax Appeals is affirmed.