**CHEW'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11145.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1575.

Robert A. Littleton, of Washington, D.C., and Clare C. Clark, of Shreveport, La., for petitioner.

Melva M. Graney, Sewall Key, A. F. Prescott, and Miriam Lashley, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is an appeal by petitioner for review, and involves deficiencies in estate taxes for the year 1940 in the amount of $2,984.50.

Questions presented: Did the sum of $22,539.85 paid to the beneficiary of insurance policies under provisions limiting the liability of the company in the event of death by self-destruction within the first two insurance years to an amount equal to premiums paid constitute "insurance" within the meaning of Section 811(g) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 811(g) exempting from inclusion in the gross estate of a decedent amounts up to $40,000 receivable by beneficiaries as "insurance"?

If such amounts do not constitute insurance, are they taxable as a part of the decedent's gross estate under Section 811(c) of the Internal Revenue Code?

The facts necessary for decision and which have been stipulated disclose that on August 14, 1940, two fifteen-year endowment policies were issued to the decedent, William Douglas Chew, Jr., by the New York Life Insurance Company. These policies were described as "15-Year Endowment-Single Premium-Endowment payable in 15 years or at prior death," and provided for the payment of the principal sums of $21,200 and $10,000 respectively. On these policies, respective premiums of $15,072.35 and $7,109.60 were prepaid. On September 30, 1940, a policy described as a "Twenty Payment Life" policy was issued by the same company to the decedent. This policy provided for the payment of the principal sum of $10,000 upon the death of the decedent. The first of the twenty annual premiums, $357.90, was paid. In all three policies, the mother of the decedent, Mrs. Carrie Cole Chew, was named as the beneficiary. But all three provided that should the beneficiary predecease the insured, the interest of such beneficiary should vest in the insured. All three policies also granted to the insured the right to change the beneficiary and guarantee to him loan and surrender values. In addition, all three policies contained the following suicide clause:

"In the event of self-destruction during the first two insurance years, whether the Insured be sane or insane, the insurance under this Policy shall be a sum equal to the premium hereon which has been paid to and received by the Company and no more."

On November 28, 1940, three months after the issuance of the endowment policies and two months after the issuance of the Twenty-Payment Life policy, the insured died under circumstances which indicated self-destruction. The coroner's records described the cause of death as "suicide by firing pistol into heart." Settlement was made between the insurance company and the beneficiary under the suicide provisions of the policies and the sums payable to the beneficiary equalling the total of premiums paid, $22,539.85, were left at interest with the company under a certificate of deposit dated February 10, 1941. The insurance company describes the sums paid as refund of premiums in the certificate of deposit, and in recording the payments on its books. The payments were also described as a refund of premiums in Treasury Form 712, which the insurance company filed with the decedent's estate tax return.

Under a judgment of succession entered August 4, 1941, by the First District Court of Caddo Parish, Louisiana, Carrie Cole Chew was named as sole heir of the decedent. In the estate tax return filed on behalf of the decedent's estate the amounts payable to the beneficiary under the fifteen year endowment and the twenty payment life policies, $22,539.85, were included in the total sum of $32,640.03 reported as amounts paid to beneficiaries as insurance. An exemption from the gross estate was claimed for this amount under Section 811 (g) which exempted from inclusion in the gross estate the first $40,000 receivable by beneficiaries as insurance. The Commissioner determined a deficiency of $2,984.50 against the estate, contending that the $22,-539.85 did not constitute amounts receivable as insurance and that they should be included in the gross estate of the decedent. The Tax Court sustained the Commissioner's contention.

The contract provisions which provide that the company will not be liable for the principal sum in the event of self-destruction within the first two insurance years does not provide an alternative maturity date on which liability of the company to pay a lesser amount of insurance arises. It is an agreement of the contracting parties on the very threshold of the contracts that if within two years, insured brought his life to an end by self-destruction, such act would constitute a risk which the company did not and would not assume.

In the event of self-destruction the entire promises in the policies were destroyed and the company became custodian of the naked amount without interest which the insured had paid as premiums, with only the duty to return these sums to insured's heirs or designated beneficiary. Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996; Keller v. Commissioner of Internal Revenue, 312 U.S. 543, 61 S.Ct. 651, 85 L.Ed. 1032; Kernochan v. United States, 29 F.Supp. 860, 89 Ct.Cl. 507, certiorari denied 309 U.S. 675, 60 S.Ct. 711, 84 L.Ed. 1019.

Within the two year period, here under consideration, if insured's death was caused by self-destruction then the insurance company did not stand to lose anything. Every element in the contracts providing for insurance in event of death went down with the clause of self-destruction. It appears to us indisputable that payments made under the insurance contracts here did not constitute insurance. Settlement made under the suicide provisions terminated absolutely the company's liability without touching the insurance features of the contract. Insured's death by suicide within the two years precluded the possibility of death by natural causes. Death by natural causes within the two year period would similarly have prevented the suicide clause from taking effect. The trend of judicial decision now is to give to each provision in an insurance policy the separate effect it was intended to have. Terry v. New York Life Insurance Co., 8 Cir., 104 F.2d 498; Connecticut General Life Insurance Co. v. McClellan, 6 Cir., 94 F.2d 445; Downey v. German Alliance Insurance Co., 4 Cir., 252 F. 701; Pyramid Life Insurance Co. v. Selkirk, 5 Cir., 80 F.2d 553.

■ The policies describe the payments made to the beneficiary as "insurance". Such designation, however, does not make it insurance. We find that the company recorded this transaction on its books and on the form filed with the estate tax return as *refund of premiums*. Moreover, our courts have clearly implied in the cases of Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996; Keller v. Commissioner of Internal Revenue, 1 Cir., 312 U.S. 543, 61 S.Ct. 651, 85 L.Ed. 1032; and Old Colony Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 102 F.2d 380, that payments to qualify as and measure to insurance under Section 811(g) must be in settlement of a contract which has exposed the company to a risk of financial loss. No such risk was incurred by the insurance company here. The amount payable at death was not a sum fixed upon any ratio of premiums paid to the probabilities of the risk insured against, which constitutes "insurance" in the statutory sense. Cf. Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996; Commissioner of Internal Revenue v. Pan-American Life Ins. Co., 5 Cir., 111 F.2d 366; In re Fidelity Assurance Association, D.C., 42 F.Supp. 973, 982.

■ Payments made to the beneficiary are taxable as a part of the gross estate of the decedent under Section 811(c) of the Internal Revenue Code. Old Colony Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 102 F.2d 380; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Chase National Bank v. United States, 278 U.S. 327, 49 S. Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Kernochan v. United States, 29 F.Supp. 860, 89 Ct.Cl. 507, certiorari denied 309 U.S. 675, 60 S.Ct. 711, 84 L.Ed. 1019.

We are of opinion and so hold that the Tax Court in ascertaining that the payments made to the beneficiary did not constitute insurance was correct, and its decree is

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

Straining at the gnat of their easy differentiation, and swallowing whole the camel of their complete inappositeness, the Tax Court and the majority have, on the claimed authority of Helvering v. LeGierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996; Keller v. Commissioner of Internal Revenue, 312 U.S. 543, 61 S.Ct. 651, 85 L.Ed. 1032, and Kernochan v. United States, 29 Fed.Supp. 860, 89 Ct.Cl. 507, determined that sums payable and paid to a beneficiary under the policy terms, as insurance payable in the event of self destruction, were not so paid. Although the policy provides not, for a cancellation of the policy and a return of premiums in the event of suicide, but expressly in that event "the insurance under each policy shall be a sum equal to the premium hereon which has been paid to and received by the company and no more", the Tax Court and the majority treat what was written as a contract for insurance as a cancellation of the policy contract and a

return of the premiums paid. It is settled law in Louisiana,[1] where this policy was written, as it is in nearly all of the states[2] that provisions in policies, providing in certain contingencies for a recovery less than the full amount of the policy, are valid insurance clauses and that they are integral parts of the insurance contract to be carried out as written. Here two of the policies were 15 year endowment, single premium policies. They were for principal sums of $21,200 and $10,000, respectively. The insured had paid on account of them premiums of $15,072.35, and $7,109.60, or a little more than two-thirds of the total insurance carried. Upon the third, a 20 payment life policy of $10,000, only one of the premiums, $357.90, had been paid. The policies could have provided that death by self destruction would cause a forfeiture of them and that the premiums would be returned to the insured. If they had so provided, death by self destruction would have put an end to the policies and the return of the premiums to the insured's estate would not have been "received as insurance", within the statute providing the exemption. But they did not so provide. On the contrary, they provided merely that the insurance to be paid to the beneficiary, in each case the mother of the insured, would be a sum equal to the premiums paid, and when the insured's death occurred, the insurer paid it to her, and she left it with the company under a policy loan provision. Under these circumstances, it is not to construe the contract but to make one for the parties, to hold that the moneys paid to the beneficiary were not received as insurance but were received as a return of premium following cancellation of the policies. Both the Tax Court and the majority seem to attach importance to the company's description of the sums it paid as a refund of premiums.

It has never been the law that, by an unilateral statement, one party to a contract can affect the rights of another. In most of the states,[3] insurance proceeds are exempted from creditors. Could it be for a moment contended that payments under a policy of this kind would not come within the exemption. All that was held in the LeGierse case was that the amounts received "must be received as the result of a transaction which involved an actual 'insurance risk' at the time the transaction was executed". [312 U.S. 531, 61 S.Ct. 649.] It is not found, nor even claimed, that the insurance was taken out in contemplation of death by self destruction. It stands admitted that, when the policies were issued, an actual insurance risk attached and was assumed. The fact that the policy contained provisions adjusting the insurance in accordance with particular contingencies and that money was paid to the beneficiary under one of these contingencies cannot alter the fact that an actual insurance risk attached at the time the policy was issued and that the insurance was paid to the beneficiary as insurance in exact accordance with the terms of the policy. The LeGierse case and the others cited dealt with wholly different situations. What was dealt with there was a contract in the nature of an annuity, a contract uniformly held to be not an insurance, but a business, contract.[4] There the parties planned an arrangement which, from its inception, was not insurance. Here the parties planned for insurance, contracted for insurance, obtained insurance, and insurance was paid to the beneficiary in the reduced amount and upon the contingencies expressly provided for in the policy. I think it plain that the Tax Court was wrong. I dissent from the opinion of the majority that its decision should be affirmed.

---

[1] Moore v. Southern Life & Health Co., La.App., 195 So. 857; Gray v. Louisiana Industrial Life, La.App., 193 So. 278.

[2] Cf. Equitable Life Assur. Soc. v. First National, 5 Cir., 113 F.2d 272, 135 A.L.R. 439.

[3] Couch on Insurance, Vol. 2, secs. 330 et seq.; Vol. 8, sec. 1930.

[4] Cf. Daniel v. Life Insurance Co., Tex. Civ.App., 102 S.W.2d 256, and Ellison v. Straw, 119 Wis. 502, 97 N.W. 168, 170, denying exemption from debts to moneys paid on annuity contracts, in which the court said, "Life insurance is one thing, investment is another, but the ingenuity of the life insurance companies in formulating contracts which confuse the distinction has been active for generations."