Sydney H. McKenzie III City Attorney Fort Lauderdale
QUESTION:
Are the death benefits provided for in the City of Fort Lauderdale Pension Plan in the nature of a contract for life insurance and, therefore, subject to the requirements of s. 112.08, F. S., that city employees be insured through an insurance company or professional administrator to provide such insurance and only after competitive bidding?
SUMMARY:
A death benefit provided for in a municipality's pension plan is in the nature of a contract for life insurance and, therefore, is subject to the requirements of s. 112.08, F. S. (1976 Supp.), regarding contracts with insurance companies or professional administrators and competitive bidding.
Section 112.08, F. S. (1976 Supp.), provides:
 Every local government unit is hereby authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, or annuity insurance, or all [or] any kinds of such insurance, for the officers and employees of the unit, upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance. Before entering any contract for insurance, the governmental unit shall advertise for competitive bids, and such contract shall be let upon the basis of such bids.
Section 624.602, F. S. 1975, defines life insurance:
 `Life insurance' is insurance of human lives. The transaction of life insurance includes also the granting of endowment benefits, additional benefits in event of death or dismemberment by accident or accidental means, additional benefits in event of the insured's disability, and optional modes of settlement of proceeds of life insurance. Life insurance does not include workmen's compensation coverages.
In his treatise, Couch discusses life insurance:
 Life insurance is in substance defined . . . as a contract, whereby one for a stipulated consideration, customarily called a premium, agrees to pay another a certain sum of money upon the happening of a given contingency which is the death of the insured under the ordinary contract and is the termination of a specified period under a contract in which the endowment feature is incorporated. Life insurance must contain an element of risk in so far [sic] as the particular individual contract is concerned, and must involve the shifting of loss from the realization of that risk to a fund created by the payment of designated premiums. [Couch Cyclopedia of Insurance Law Second s. 1:68.]
In his treatise, Appleman discusses life insurance:
 A life policy is a contract to pay a sum certain upon the insured's death in consideration of stated premiums. Being fixed in amount, and not contingent upon the amount of loss occasioned by the death of the insured, it is not considered to be a contract of indemnity . . . . The rules applicable to life insurance policies are those which govern contracts generally . . . . A contract of life insurance must contain an element of risk in so far [sic] as a particular individual contract is concerned . . . . The word `policy' refers to the insurance contract. There must be three parties to such a contract, namely, the insurer, insured, and beneficiary, and without any one of these parties the ordinary life insurance contract cannot stand. [Appleman Insurance Law and Practice
s. 7421.]
A reading of the Fort Lauderdale Code, particularly s. 31-5 and s. 31-15, indicates that the requirements of the above-cited Florida statute, as well as the general concepts of life insurance, have been met. Section 31-5, which pertains to city employees other than police and firefighters, reads:
(1) Normal retirement benefit.
 (b) Duration, survivor benefits. A member retiring hereunder shall receive a monthly benefit which shall commence on his retirement date and be continued thereafter during his lifetime; upon his death the full retirement benefit shall be continued to his spouse as of date of retirement for one (1) year and sixty per cent (60%) of said amount continued thereafter until the earlier of death or remarriage.
(4) Preretirement death.
 (a) Service incurred. A death benefit shall be payable in behalf of any member who dies as a direct result of an occurrence arising in the performance of service, the determination of which shall be by the board. The benefit shall be payable as follows:
 (1) To the spouse, until the earlier of death or remarriage, a benefit equal to fifty per cent (50%) of the member's earnings . . . .
Section 31-15, which pertains to police and firefighters, has provisions similar to Section 31-5.
Although there appears to be no direct Florida precedent, the case law of other states yields the rule that provisions of state employees' retirement laws which provide for a death benefit are in the nature of a contract of life insurance and are to be governed generally by the principles applicable to such contracts. Shaw v. Board of Administrators, 241 P.2d 635 (Cal.App. 1952). InRe Newton's Estate, 32 N.Y.S.2d 473 (N.Y. Sur. Ct. 1941). In Re
Burtman's Estate, 41 N.Y.S.2d 778 (N.Y. Sur. Ct. 1943). Although there is contrary authority to the effect that death benefits payable under city and state retirement systems on the death of a schoolteacher during her term of active service did not constitute `proceeds' of an `insurance policy' within the statutory provision granting exemption from an inheritance tax, this decision pertained to inheritance tax law rather than to the law governing the initial formation of the life insurance or death benefit policy. In Re Richartz' Estate, 288 P.2d 857 (Cal. 1955).
Prepared by: Martin Friedman, Assistant Attorney General
Horace Schow II Legal Research Assistant